IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE FRANCISCO AVILA : CIVIL ACTION
:
v. :
:
JOSEPH J. PIAZZA, et al. : NO.  06-3385

### REPORT AND RECOMMENDATION

**L. FELIPE RESTREPO**                                                                           **February 2, 2007**
**UNITED STATES MAGISTRATE JUDGE**

      Presently before the Court is a Petition for Writ of Habeas Corpus filed by Jose Francisco Avila pursuant to 28 U.S.C. § 2254.  Petitioner is currently incarcerated at the State Correctional Institution in Coal Township, Pennsylvania.  For the reasons which follow, the habeas petition should be denied.

**1.**    **PROCEDURAL HISTORY**

      Following an extensive colloquy, on December 9, 2002 the Honorable Paul K. Allison, of the Court of Common Pleas of Lancaster County, accepted petitioner's plea of nolo contendere to third degree murder.  See Commonwealth v. Avila, No. 652 MDA 2005, Mem. Op. at 2 (Pa. Super. filed Dec. 20, 2005).  The Court deferred sentencing pending the preparation of a pre-sentence report, and on January 31, 2003, petitioner was sentenced to fifteen to thirty (15-30) years in prison.  Id.

      On January 12, 2004, the Superior Court of Pennsylvania affirmed the judgment of sentence.  Id.  Avila did not seek allowance of appeal from the Supreme Court of Pennsylvania.

Id.

On September 29, 2004, Avila filed a counseled petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-46.  See Pa. Super. Ct. Op. filed 12/20/05, at 2.  Following an evidentiary hearing on December 20, 2004, the PCRA Court denied the petition.  Id.  Petitioner filed an appeal in the Superior Court, which affirmed the denial of the PCRA petition on December 20, 2005.  Id. at 8.  Pennsylvania's Supreme Court denied allowance of appeal on April 10, 2006.  See Commonwealth v. Avila, 894 A.2d 814 (Pa. Super. Dec. 20, 2005) (table), allocatur denied, 897 A.2d 450 (Pa. Apr. 10, 2006) (table).

On June 25, 2006, the Clerk of Court for the United States District Court for the Middle District of Pennsylvania received Avila's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (herein referred to as "original habeas petition").  See Orig. Hab. Pet. at 1.  By Order filed July 25, 2006, the Honorable Richard P. Conaboy adopted the Report and Recommendation of United States Magistrate Judge Andrew Smyser and transferred the petition to this Court.  See Avila v. Piazza, No. 06-1267, Order (M.D. Pa. filed July 25, 2006).

In that the habeas petition was not filed on the proper form, the Honorable Cynthia M. Rufe on August 3, 2006 ordered that petitioner complete the current standard form as directed by Local Rule of Civil Procedure 9.3(b) and habeas rule 2, see 28 U.S.C. foll. § 2254, and return it to the Clerk of Court within thirty (30) days to avoid dismissal of this civil action.  On September 15, 2006, the Clerk of Court received petitioner's habeas petition filed on the proper form (Doc. No. 3) raising a claim of ineffective assistance of counsel.  The District Attorney of Lancaster County ("respondent") filed a Response contending that Avila's habeas claim is unexhausted, procedurally defaulted, and without merit.  See Respondent's Br. 7-17.

**2.   DISCUSSION**

    **(A)   Exhaustion of State Remedies**

"It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)), cert. denied, 532 U.S. 919 (2001); Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993). Specifically, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); see Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001), cert. denied, 535 U.S. 957 (2002).

The petitioner has the burden of proving all facts entitling him to a discharge from custody as well as demonstrating that he has met all procedural requisites entitling him to relief. Brown v. Cuyler, 669 F.2d 155, 157 (3d Cir. 1982). Thus, "[t]he habeas petitioner bears the burden of proving that he has exhausted available state remedies." Toulson, 987 F.2d at 987.

In the present case, Avila alleges "ineffective assistance of counsel which resulted in an entry of a plea which was unknowing and unintelligent." See Hab. Pet. ¶ 12(A). In support of his claim, he avers that "[t]he plea of nolo contendere entered by the defendant was not knowingly and voluntarily made and not the product of an intelligent and free choice since the defendant entered such a plea solely on the inaccurate and erroneous representation of his counsel that he would receive a sentence not greater than 108 months." See Hab. Pet. ¶ 12(A).

Construing the pro se petition liberally, see Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)) (pro se documents are to be liberally

3

construed), it appears that petitioner has fairly presented his claim to the Pennsylvania courts on PCRA appeal, see, e.g., Pa. Super. Ct. Op. filed 12/20/05, at 2-3, and he therefore has satisfied the exhaustion requirement.[1]  See O'Sullivan, 526 U.S. at 844-45.

### (B)   Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132 (Apr. 26, 1996), precludes federal habeas relief to "a person in custody pursuant to the judgment of a State court" based on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim"

> (1) resulted in a decision that was **contrary to**, or involved an **unreasonable application** of, clearly established Federal law, as determined by the Supreme Court of the United States,[2] or
>
> (2) resulted in a decision that was based on an unreasonable

---

1. On Avila's appeal from the denial of his PCRA petition, the Superior Court addressed the claim that Avila's counsel advised him that "if he pleaded guilty, the greatest sentence he would receive was **8 years** incarceration."  See Pa. Super. Ct. Op. filed 12/20/05, at 2-3 (emphasis added).  However, the present petition alleges Avila was erroneously advised that the greatest sentence he could receive was **9 years** in prison.  See Hab. Pet. ¶ 12(A).  Nevertheless, under the circumstances in this case, where petitioner appears to have presented to the state courts the claim that his counsel rendered ineffective assistance in representing to Avila that following a nolo contendere plea he would receive a sentence well below the sentence actually imposed, it appears that petitioner has satisfied the exhaustion requirement.  See Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004) (exhaustion requirement is satisfied if the petitioner can show that he "fairly presented" the federal claim to the state courts); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (citing Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989)) (to satisfy the exhaustion requirement, the petitioner must demonstrate that "the claims raised in the state courts are 'substantially equivalent' to those asserted in federal court").

2. "Clearly established Federal law, as determined by the Supreme Court of the United States" refers to the "holdings, as opposed to the dicta" of the Supreme Court's decisions as of the time of the relevant state court decision.  Yarborough v. Alvarada, 124 S. Ct. 2140, 2147 (2004) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

>determination of the facts in light of the evidence presented
>in the State court proceeding.

28 U.S.C. § 2254(d) (footnote added) (emphasis added); see Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S. Ct. 269 (2001). In Williams v. Taylor, the Supreme Court interpreted the standard under § 2254(d)(1) as follows:

>Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[3] or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13 (footnote added).

The Court of Appeals for the Third Circuit observed in Matteo v. Superintendent, SCI Albion, 171 F.3d 877 (3d Cir.) (en banc), cert. denied, 528 U.S. 824 (1999),[4] that to prove entitlement to habeas relief under the "contrary to" provision of § 2254(d)(1), "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent **requires the contrary outcome**." Matteo, 171 F.3d at 888 (emphasis added); see

---

3. Thus, "[a] state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." Brown v. Payton, 125 S. Ct. 1432, 1438 (2005) (citing Williams, 529 U.S. at 405); see Early v. Packer, 123 S. Ct. 362, 365 (2002).

4. Prior to the Supreme Court's decision in Williams v. Taylor, the Court of Appeals for the Third Circuit construed the standard of review under § 2254(d)(1) in Matteo. The Third Circuit has since stated that its opinion in Matteo is in accord with the Supreme Court's decision in Williams. See Werts, 228 F.3d at 197.

Werts, 228 F.3d at 197.  "This standard precludes granting habeas relief solely on the basis of simple disagreement with a reasonable state court interpretation of the applicable precedent."  Id. at 197 (quoting Matteo, 171 F.3d at 888).

When making the "unreasonable application" inquiry, the federal habeas court should ask "whether the state court's application of clearly established federal law was **objectively unreasonable**."  Williams, 529 U.S. at 409 (emphasis added); see Chadwick v. Janecka, 312 F.3d 597, 607 (3d Cir. 2002) (citing Williams, 529 U.S. at 409, and Matteo, 171 F.3d at 891).  In applying the "unreasonable application" provision of § 2254, "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in **an outcome that cannot reasonably be justified under existing Supreme Court precedent.**"  Matteo, 171 F.3d at 891 (emphasis added); see Chadwick, 312 F.3d at 607 (citing Matteo, 171 F.3d at 891); Werts, 228 F.3d at 197.

The Supreme Court stressed that an application of federal law **may be incorrect but still not unreasonable.**  Williams, 529 U.S. at 411; see Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196.  Thus, mere **disagreement with a state court's conclusions is insufficient to justify relief**.  Williams, 529 U.S. at 411; Matteo, 171 F.3d at 891.  In determining whether the state court's application of the Supreme Court precedent is objectively reasonable, habeas courts may consider the decisions of federal courts of appeals and district courts.  Id. at 890; Ross v. Vaughn, 2001 WL 818359, at *4 (E.D. Pa. Jan. 16, 2001) (citing Matteo).

With regard to findings of fact, § 2254(e)(1) provides that a state court's determination of a

6

factual issue[5] is "**presumed to be correct**" and further provides that a habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphasis added); see Chadwick, 312 F.3d at 607; Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196. "This presumption applies to the factual determinations of both state trial and appellate courts." Duncan, 256 F.3d at 196; see Stevens v. Delaware Correctional Ctr., 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)). Furthermore, under Supreme Court and Third Circuit precedent, the presumption of correctness under the habeas statute applies to **implicit** factual findings as well as the express findings of the state courts. See Campbell v. Vaughn, 209 F.3d 280, 285-86, 290 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001).

### (C)  Ineffective Assistance Claim

Petitioner's claim alleges that his plea "was unknowing and unintelligent" as a result of his counsel's ineffective assistance in providing an "inaccurate and erroneous representation" that Avila "would receive a sentence not greater than 108 months." See Hab Pet. ¶ 12(A). The merits of ineffective assistance claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984). See Williams, 529 U.S. at 390. In Strickland, the Supreme Court set forth the now-familiar standard for reviewing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was

---

5. Factual issues are "basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'" Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting Townsend v. Sain, 372 U.S. 293 (1963)).

>deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Strickland, 466 U.S. at 687; see Williams, 529 U.S. at 390.[6]

To establish that counsel's assistance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690.

In meeting the prejudice prong of an ineffective assistance claim: "Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see Williams, 529 U.S. at 391. In a guilty plea case, a petitioner only satisfies the prejudice requirement by demonstrating that there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir.) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)), cert. denied, 531 U.S. 1003 (2000).

Although Strickland discussed a two-prong test in evaluating claims of ineffective assistance, it is unnecessary for a court to address both components of the inquiry if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 694. Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

---

6. An inquiry into effective assistance of counsel is a mixed question of law and fact. Berryman, 100 F.3d at 1094. Therefore, an ineffective assistance claim "require[s] the application of a legal standard to the historical-fact determinations." Id. (quoting Townsend, 372 U.S. at 310 n.6).

should be followed." Id.

In addressing petitioner's ineffective assistance claim in the present case, citing Commonwealth v. Kimball, 72 A.2d 582, 587 (Pa. 1999), the Superior Court of Pennsylvania applied the legal standard under Pennsylvania law. See Pa. Super. Ct. Op. filed 12/20/05, at 3. The Third Circuit has "ruled that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland." See Jacobs v. Horn, 395 F.3d 92, n.9 (3d Cir. 2005) (citing Werts, 228 F.3d at 204), cert. denied, 126 S. Ct. 479 (2005); see also Werts, 228 F.3d at 204 (finding that application of Pennsylvania's standard governing ineffective assistance claims was not contrary to established Supreme Court precedent); Brand v. Gillis, 210 F. Supp.2d 677, 684 (E.D. Pa. 2002) (citing Werts) (Pennsylvania standard governing ineffective assistance claims "has been found to be materially identical" to the Strickland test), aff'd, 82 Fed. Appx. 278 (3d Cir. Dec. 2, 2003). Thus, "the state court identifie[d] the correct governing legal principle" in this case, see Williams, 529 U.S. at 412-13.

Furthermore, petitioner has failed to show that "the state court [was] confronted [with] a set of facts that [were] materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[d] at a result different from [the Supreme Court's] precedent." See Williams, 529 U.S. at 406. Therefore, the standard applied by the state court in this case was not "contrary to" the Supreme Court's well-established rule governing ineffective assistance of counsel. See Williams, 529 U.S. at 405-06; Werts, 228 F.3d at 204; Brand, 210 F. Supp.2d at 684; see also Early, 123 S. Ct. at 365 (complying with AEDPA does not require state-court decision to cite relevant Supreme Court cases – "indeed it does not even require **awareness** of the [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

9

them.") (emphasis in original).

A state court plea is constitutional if the circumstances demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead. Ardrey v. Bravo, 2002 WL 700406, at *2 (10th Cir. Apr. 24, 2002) (citing Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). Thus, in order to demonstrate that his plea was unknowing or involuntary, a petitioner must present proof that he was not advised of, or did not understand, the direct consequences of his plea. Brady v. United States, 397 U.S. 742, 755 (1970); Jones v. Kearney, 2002 WL 373472, at *5 (D. Del. Mar. 6, 2002); see Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (The "long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"); Heiser v. Ryan, 951 F.2d 559, 561 (3d Cir. 1991) (quoting Brady, 397 U.S. at 748) (A guilty plea "must be a 'knowing, intelligent act,' that is 'the voluntary expression of [the defendant's] own choice.'").

"A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden." Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994) (pre-AEDPA). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." Id. (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

Here, in support of the denial of petitioner's claim, the Pennsylvania Superior Court found "[t]he oral nolo contendere colloquy in this matter contradict[ed] [Avila's] representation

that he was promised an eight year sentence." See Pa. Super. Ct. Op. filed 12/20/05, at 4.  In particular, during the colloquy, the following exchange occurred:[7]

> The Court:  Has anyone made any threats to induce you to plead guilty today?
>
> The Interpreter:  No.
>
> The Court: Has anyone made any promises to induce you to plead guilty - - I'm sorry, plead nolo, I'm saying guilty, it's nolo contendere?
>
> The Interpreter: No.
>
> The Court: And you understand that for purposes of sentencing [a nolo contendere plea is] the same as if you had been proven guilty?
>
> The Interpreter: Yes.
>
> The Court: And that the maximum exposure here is 40 years and $50,000 in fines - -
>
> Mr. Gratton: That's correct, Your Honor.
>
> [Plea Counsel]: That's correct Your Honor.
>
> The Court:  - - for a third degree murder?
>
> The Interpreter: Yes.
>
> The Court: And there are sentencing guidelines that have been adopted by the Sentencing Commission of Pennsylvania which indicate that there is a prior record score of zero and that the guildelines call for a standard range sentence of 72 to 240 months for the minimum sentence, with plus or minus 12 for aggravating or mitigating circumstance?

---

7. Petitioner "claims that he is a Mexican national who speaks only Spanish and that he was completely dependent on his plea counsel." See Pa. Super. Ct. Op. filed 12/20/05, at 3.  During the plea colloquy, he "spoke through an interpreter from Translations America" and "stated that he understood that he was charged with homicide and was pleading nolo contendere to third degree murder." Id. at 4.

>The Interpreter: Yes.
>
>The Court: And by pleading guilty without a plea agreement you're leaving it to the discretion of the court as to what sentence to impose?
>
>The Interpreter: Yes.

Id. at 4-5 (citing N.T. Plea 12/9/02, at 6-7).

The Superior Court further found that Avila "**admitted that when the judge inquired if [he] was aware he faced forty years imprisonment, he responded that no one had made him any contrary promises.**" See Pa. Super. Ct. Op. filed 12/20/05, at 6 (emphasis added). The Court noted that Avila "stated that he was aware from the oral colloquy that the sentencing guidelines called for a minimum sentence between six and twenty years imprisonment and that the sentence was in the judge's discretion." Id.

In addition, the Superior Court found that at the evidentiary hearing, petitioner's plea counsel, Attorney Samuel Encarnacion, testified as follows:

>[Petitioner] faced the death penalty and Attorney James Gratton served as co-counsel. Mr. Encarnacion translated the discussions between Mr. Gratton and [Avila]. Mr. Encarnacion is a native of the Dominican Republic, speaks fluent Spanish, understood [petitioner], and [petitioner] understood him. **Mr. Encarnacion explained the maximum sentence possibility of forty years to [petitioner] and advised [him] several times that the standard sentencing guidelines range was as high as twenty to forty years imprisonment. Mr. Encarnacion denied that he ever told [petitioner] he would receive eight years.** In light of [petitioner's] good record and mitigating factors, counsel was hoping for the imposition of a ten-year minimum sentence.
>   Additionally, Mr. Encarnacion translated the written plea colloquy in detail for [petitioner], including the maximum sentence exposure of forty years imprisonment and said that [petitioner] signed it in his presence. The Mexican consulate was involved in the matter, and Mr. Encarnacion had many discussions with

12

>[petitioner] and the consulate concerning the sentencing guidelines and [petitioner's] sentence. Counsel was present at the oral plea colloquy and believed [petitioner] was fully aware of the possible sentence. Mr. Encarnacion also testified that **[petitioner] did not indicate that he wished to withdraw his plea prior to sentencing after the judge stated the sentencing range at the oral plea colloquy.**

Id. at 6-7 (emphasis added). The Superior Court also found that Mr. Gratton testified at the evidentiary hearing "that he communicated with [petitioner], with the aid of Attorney Encarnacion, and that he did not observe any communication difficulty between Attorney Encarnacion and [petitioner]." Id. at 7-8. The Court found that Mr. Gratton "also testified that he never heard Attorney Encarnacion tell [petitioner] that he would be sentenced to eight years in prison." Id. at 8. Noting that the "PCRA court resolved the credibility determination in favor of [Avila's] plea counsel," and finding that "[t]he record supports the PCRA court's determination," the Superior Court affirmed the PCRA court's denial of petitioner's claim. Id.

Although the governing standard as to whether a plea is voluntary for purposes of the Constitution is a question of law, "questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings." See Parke v. Raley, 506 U.S. 20, 35 (1992) (citing Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983)). Here, the Court must presume that the state court's determinations of the factual issues are correct since petitioner has not rebutted the presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196. This presumption of correctness "applies to the factual determinations of both state trial and appellate courts," see Duncan, 256 F.3d at 196; see Dickerson, 90 F.3d at 90, and to implicit as well as express findings of the state courts, see Campbell, 209 F.3d at 285-86, 290.

In light of the state court's factual findings, including the state court's credibility findings regarding the testimony at the PCRA evidentiary hearing, and the strong presumption that counsel rendered adequate assistance, see Strickland, 466 U.S. at 690, petitioner failed to demonstrate that "counsel's representation fell below an objective standard of reasonableness," id. at 688.  Therefore, petitioner failed to satisfy the deficient performance prong of the standard for ineffective assistance of counsel.  See id.  Furthermore, petitioner failed to show that there was a "reasonable probability that, but for counsel's [alleged] errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial."  See Weeks, 219 F.3d at 257 (quoting Hill, 474 U.S. at 59) (even if petitioner's counsel failed to fully advise petitioner of the consequences of his guilty plea, the petitioner "could not have been prejudiced because the trial judge told him").

Therefore, it cannot be said that the state court's adjudication of petitioner's claim "resulted in an outcome that cannot reasonably be justified."  See Matteo, 171 F.3d at 891.  Nor can it be said that "Supreme Court precedent requires an outcome contrary to that reached by" the state court.  See id.  Thus, the state court's adjudication of petitioner's claim did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  See 28 U.S.C. § 2254(d)(1); see also Williams, 529 U.S. at 404-05; Matteo, 171 F.3d at 891.  Petitioner also does not demonstrate that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d)(2).  Accordingly, the present petition should be denied.

14

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2)); see Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000).  To establish this, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong."  Id. at 484; see Miller-El, 123 S. Ct. at 1040.

Here, since petitioner has not made the requisite showing of the denial of a constitutional right, a COA is not warranted.  See Slack, 529 U.S. at 484.  Accordingly, the habeas petition should be denied, and a COA should not issue.

**R E C O M M E N D A T I O N**

AND NOW, this 2nd day of February, 2007, upon consideration of the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and respondent's opposition thereto, for the reasons provided in the accompanying Report, it is hereby RECOMMENDED that the habeas petition be DENIED and that a certificate of appealability should not issue.

          s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE